IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 14-40 |
| | ) | Judge Nora Barry Fischer |
| MICHAEL TYRONE WALLER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Presently before the Court are Defendant Michael Tyrone Waller's Motion to Recuse, (Docket No. 72), and Motion to Dismiss the Indictment on the Grounds of Vindictive and Selective Prosecution, (Docket No. 31). The Government opposes said Motions. Upon consideration of all of the parties' submissions, the evidence of record, their arguments, and for the following reasons, Defendant's Motion to Recuse, (Docket No. 72), and Motion to Dismiss the Indictment on the Grounds of Vindictive and Selective Prosecution, (Docket No. 31), are denied, with prejudice. As Defendant moves for recusal, this Court finds it proper to address said Motion first.

### II.  MOTION TO RECUSE

#### A.  PROCEDURAL HISTORY

Despite this Court's August 22, 2014 Order, to not to file any more Pretrial Motions,[1] Defendant filed a Motion to Recuse on October 2, 2014. (Docket Nos. 57, 72). With leave of Court for a brief extension, the Government responded to same on October 21, 2014, (Docket

---

[1] The Court issued such an Order as the deadline for same had expired on March 31, 2014, and Defendant did not move for an extension.

Nos. 76, 78). The Court took this Motion to Recuse under advisement on October 22, 2014. As this matter has been fully briefed, it is now ripe for decision.

## B. DISCUSSION

Pursuant to 28 U.S.C. §§ 144, 455(a) and 455(b)(1), Defendant seeks recusal on the basis that this Court "harbors a bias and prejudice against the defendant of such magnitude that the Court is permitting United Sates Attorney Ross Lenhardt to commit perjury."[2] (Docket No. 72 at 1). He claims that this Court has permitted AUSA Lenhardt and the police to support the Government's case with a "false impression by the false representation pretenses of representation of an imaginary witness." (*Id.* at 1).

Although the legal standard of recusal is the same under each provision—bias—the provisions differ slightly. *N'Jai v. U.S. E.P.A.*, 2013 WL 5357159, at *1 (W.D. Pa. Sept. 25, 2013) (J. Fischer). Section 144 requires federal district court judges to recuse if a party timely files a sufficient affidavit, setting forth factual statements showing the judge has personal bias or prejudice against a party. 28 U.S.C. § 144. An affidavit that puts forth conclusory statements and opinions, however, is insufficient and does not require recusal under § 144. *Hill v. Carpenter*, 323 F. App'x 167, 170 (3d Cir. 2009) (citing *United States v. Vespe* 868 F.2d 1328, 1340 (3d Cir. 1989). Section 455 applies regardless of whether a party files a formal motion and affidavit for recusal, and requires recusal when a judge's impartiality "might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here [she] has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

---

[2] In support of his perjury claim, Defendant cites to 18 U.S.C. § 1001. (Docket No. 72 at 7). As the Government correctly points out, § 1001(b) states that "Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b). Defendant's accusations stem from AUSA Lenhardt's allegedly false statements in pleadings and during judicial proceedings. (Docket No. 72 at 2-4). As such, even if the Court considered Defendant's accusations meritorious, § 1001(b) exempts him from such a violation.

The test for recusal is an objective one and requires recusal where a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.,* 368 F.3d 289, 301 (3d Cir. 2004). The bias required before recusal is warranted under either § 144 or § 455 "must stem from a source outside of the official proceedings." *Liteky v. United States,* 510 U.S. 540, 544 (1994). Moreover, the Third Circuit has made it clear that "a party's displeasure with legal rulings does not form an adequate basis for recusal." *Securacomm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 278 (3d Cir. 2000). The court recently reinforced the point that disqualification and recusal should not be methods of "judge shop[ping]." *In re Earl A. Pondexter*, 537 F.App'x 15 (3d Cir. 2013) (citation omitted). In order to establish the level of bias necessary to require recusal, facts that arose during the course of litigation are usually insufficient. Generally, "opinions formed by a judge on the basis of events occurring in the course of prior proceedings do not constitute a basis for a bias motion under 28 U.S.C. §§ 144, 455(a) and 455(b)(1), unless they display a deep-seated antagonism that would make fair judgment impossible." *Atwell v. Schweiker,* 274 F. App'x 116, 117 (3d Cir. 2007) (citing *Liteky*, 510 U.S. at 555).

Here, Defendant has not met the standard for recusal under either § 144 or § 455. As to § 144, Defendant has not filed the requisite Affidavit. Even if this Court construed this *pro se* Defendant's assertions in his Motion for Recusal as an Affidavit, it nevertheless would not meet the standard. He has not set forth any objective, factual assertions to indicate this Court's bias. Rather, he proffers conclusory statements and opinions that derive from proceedings before this Court. *See Vespe*, 868 F.2d at 1340 ("[c]onclusory statements and opinions" made by a litigant in his § 144 Affidavit "need not be credited").

Next, recusal is not required under § 455's objective standard. Apart from Defendant's conclusory statements and accusations, he has set forth no evidence to demonstrate extrajudicial bias. As the Government correctly points out, the crux of Defendant's claim is his desire to ascertain the full identity of the witness with the initials "R.N." (Docket No. 78 at 16). Despite Defendant's accusations that this witness is imaginary, (Docket No. 72 at 5-6), this Court has previously found that R.N. exists. (Docket No. 61 at 2-3, 15-16). The Court based its finding on the testimony presented by the Government's witnesses. *See, e.g.* (5/30/14 Tr. at 60:23-65:24, 75:2-19).[3] The Court points out that Defendant cross-examined the Government's witnesses about R.N. (5/30/14 Tr. at 66:8-70:21, 76:6-78:18). In light of all of the evidence presented, the Court found that the Government's witnesses were credible. (Docket No. 61 at 2); *see, e.g. United States v. Richardson*, 501 F.Supp.2d 724, 734 (W.D.Pa. 2007) ("the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge.") (citations omitted). Despite Defendant's repeated accusations to the contrary, this Court's findings relative to R.N. are not to be disturbed.

In addition, this Court notes that disagreement with its ruling on Defendant's Motion to Suppress, (Docket No. 61), is not a basis to bring a claim for recusal. The Third Circuit has long held that a party's displeasure with rulings does not form an adequate basis for recusal. *Securacomm Consulting, Inc.*, 224 F.3d at 278; *In re TMI Litig.*, 193 F.3d at 728); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990). The Supreme Court of the United States has held that "judicial rulings alone almost never constitute a valid basis for a bias or

---

[3] All citations to the May 30, 2014 Hearing on Defendant's Motion to Suppress are herein referred to as "(5/30/14 Tr. at ___." The Court considered the parties' Proposed Findings of Fact and Conclusions of Law. (Docket Nos. 75, 78).

partiality motion." *Liteky*, 510 U.S. at 555. Thus, Defendant's difference of opinion from this Court is not a basis for recusal.

## C.  CONCLUSION

In consideration of the above, Defendant's Motion for Recusal is denied. The Court proceeds to address Defendant's Motion to Dismiss Indictment.

## III. MOTION TO DISMISS INDICTMENT

## A.  FINDINGS OF FACT

The Court now makes findings based on the credible evidence presented at the August 22, 2014 hearing on Defendant's Motion to Dismiss.[4] (Docket No. 56). During the Hearing,[5] the parties presented documentary evidence and Defendant called AUSA Lenhardt as a witness. (Docket No. 56). In this Court's estimation, based on his earnest demeanor and answers to counsel's, Defendant's, and the Court's questioning, AUSA Lenhardt offered a convincing version of the events in this case and of Defendant's and his prior encounters. *See United States v. Garcia*, 521 F.App'x 71, 73 (3d Cir. 2013) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) ("'[w]hen findings are based on determinations regarding the credibility of witnesses . . . for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'"). To the extent that Defendant's testimony and/or statements to the Court contradicted the AUSA Lenhardt's, the Court finds AUSA Lenhart's testimony to be more credible.

---

4 The transcript of same, filed on September 23, 2014, has been reviewed and considered by this Court. (Docket No. 71). All citations to this transcript are herein referred to as "8/22/14 Tr. at ___."
5 This Court also convened Hearings and Argument on May 30, 2014, (Docket No. 32) and July 23, 2014, (Docket No. 47). At the May 30, 2014 Hearing, the Court received evidence and heard argument on Defendant's Motion to Suppress. (Docket No. 32). The Opinion denying said Motion can be found at Docket No. 61. At the July 23, 2014 Hearing on Defendant's Motion to Dismiss the Indictment, Defendant testified and indicated that he wished to call AUSA Lenhardt as a witness, who was excused from the proceedings that day due to another trial. (Docket No. 47). Thus, the Court continued the hearing until August 22, 2014 to enable Defendant to call AUSA Lenhardt to the stand. (*Id.*).

As background, Defendant has a substantial criminal history, during which Assistant United States Attorney Ross Lenhardt ("AUSA Lenhardt" or "Lenhardt") has prosecuted him in both state and federal court. (Docket No. 56-3); *United States v. Waller*, Cr. No. 08-423. Lenhardt has been an AUSA since December 2005. (8/22/14 Tr. at 38:15-17). Prior to that, he was an Assistant District Attorney ("ADA") for Allegheny County for approximately 15 or 16 years. (8/22/14 Tr. at 38:18-19).

Defendant introduced a listing of his prior cases in the Court of Common Pleas of Allegheny County. (Docket No. 56-2). The Government then offered a separate chart listing Defendant's prior cases in Allegheny County, including the prosecutors for the various phases of each case. (Docket No. 56-3). Notably, Defendant did not object to this exhibit. (8/22/14 Tr. at 41:24). Lenhardt credibly testified that, because of its size and the volume of cases before it, the Allegheny County District Attorney's Office does not adhere to a vertical prosecution model, *i.e.*, one where one ADA handles a case from beginning to end. (8/22/14 Tr. at 28:4-31:11). Indeed, the Government's chart, (Docket No. 56-3), demonstrates that numerous ADAs were involved in Defendant's state cases at various stages of the prosecution, corroborating AUSA Lenhardt's testimony.

As an ADA, Lenhardt was involved in the following two state court cases against Defendant: Case No. 2005-03066 and Case No. 2005-03067.[6] (*Id.*). He handled the coroner's inquest[7] at both of those cases, but ADA Daniel Konieczka prosecuted Defendant in Case No. 2005-03066 and ADA Stephie-Anna Kapourales was the prosecutor in Case No. 2005-03067. (*Id.*); (8/22/14 Tr. at 47:24-48:15).

---

[6] The Government filed the docket sheets from Defendant's prior Allegheny County criminal cases as exhibits to its Response to Defendant's Motion to Dismiss, (Docket No. 42). (Docket No. 42-1, 42-2, 42-3, 42-4, 42-5, 42-6, 42-7, 42-8, 42-9, 42-10, 42-11).

[7] A coroner's inquest is the equivalent of a preliminary hearing in a homicide case. (8/22/14 Tr. at 48:10-15).

During Defendant's trial in Case No. 2005-03067, Lenhardt was walking down the hallway outside of Judge Manning's courtroom, where the trial was taking place. (8/22/14 Tr. at 51:1-8). He observed an individual from the hallway making a gesture through the courtroom door's window as the main Commonwealth witness was testifying. (8/22/14 Tr. at 51:10-14). Based on his training and experience as an ADA who prosecuted gang members and violent street criminals, Lenhardt explained that this gesture meant that an individual, *i.e.* the Commonwealth's witness, was a snitch. (8/22/14 Tr. at 51:11-14, 53:6-17). Believing that this conduct was intended to threaten said witness, Lenhardt informed ADA Kapourales of his observations, and she later called him to the stand to testify about same. (8/22/14 Tr. at 51:15-18). In doing so, he did not testify about Defendant. (8/22/14 Tr. at 51:22-24).[8]

As stated above, Lenhardt left the Allegheny County District Attorney's Office and joined the United States Attorney's Office in the Western District of Pennsylvania in December 2005. (8/22/14 Tr. at 20:22-24). During his tenure as an AUSA, he was assigned to prosecute the case filed at Criminal Number 08-423. (8/22/14 Tr. at 22:25-23:13). In that case, on December 9, 2008, a federal grand jury returned an Indictment charging Defendant with violating 18 U.S.C. § 922(g)(1), § 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1). *Waller*, Cr. No. 08-423, Docket No. 1.

Prior to the trial in that matter in 2009, the parties engaged in debate before the Honorable Alan N. Bloch about whether or not Defendant would be classified as a career

---

[8] AUSA Lenhardt also testified that in another one of Defendant's state court cases, Case No. 2009-01225, he was asked by U.S. Marshals, due to his prior employment as an ADA, to go with them to a proceeding before the Honorable John Zottola, because they were unfamiliar with the Allegheny County Criminal Courthouse and the procedures there. (8/22/14 Tr. at 45:15-47:3). The proceeding involved an incident wherein the U.S. Marhsals were at the Allegheny County Jail to pick up Defendant, and he had a razor blade on his person. (8/22/14 Tr. at 46:2-22). AUSA Lenhardt had no involvement in the prosecution of that case. (8/22/14 Tr. at 47:2-3). In fact, he assisted the defense in that case by helping to produce discovery to both the prosecutor and Defendant. (8/22/14 Tr. at 47:5-20).

offender under the Armed Career Criminal Act, 18 U.S.C. § 924.[9] (8/22/14 Tr. at 60:12-18). AUSA Lenhardt testified that he believed Defendant's attorney sought a continuance because of the Third Circuit's decision in *United States v. Johnson*, 587 F.3d 203 (3d. Cir. 2009), which addressed that issue. (8/22/14 Tr. at 60:7-21). Given his discretion, Judge Bloch was opposed to such a continuance and recommended that the parties attempt to reach an agreement on a specific guideline range. (8/22/14 Tr. at 60:18-24). Based on the case law at the time and his own calculations, AUSA Lenhardt explained that he believed that Defendant was considered a "career criminal," meaning that his guideline range would be between 151 and 188 months. (8/22/14 Tr. at 58:25-59:15).[10] He also testified that this belief was consistent with Judge Bloch's recommendations as to an appropriate guideline range. (8/22/14 Tr. at 59:21-25).

With said range in mind, AUSA Lenhardt offered Defendant a plea agreement, but he did not accept it and the case proceeded to trial. (8/22/14 Tr. at 61:1-3, 24:17-23); (Docket No. 64).[11] A jury convicted him of all three counts. *Waller*, Cr. No. 08-423, Docket No. 40. Judge Bloch sentenced him to 111 months' imprisonment at Counts One and Two, to be served concurrently, and 60 months' imprisonment at Count Three, to be served consecutively to the term imposed at Counts One and Two. *Id.* at Docket No. 59.

Defendant appealed, and his conviction was overturned by the United States Court of Appeals for the Third Circuit because of an error in the jury instructions. *United States v. Waller*, 654 F.3d 430 (3d Cir. 2011). On remand, AUSA Lenhardt did not seek a superseding indictment or any sentencing enhancements. (8/22/14 Tr. at 61:14-18). Instead, he received permission from

---

[9] The Armed Career Criminal Act imposes a mandatory 15-year prison term on a felon unlawfully in possession of a firearm who has three prior convictions for committing certain drug or violent crimes. 18 U.S.C. § 924(e)(1).

[10] This testimony is consistent with the proposed plea agreement the Government filed, (Docket No. 64), and does not support Defendant's contention that AUSA Lenhardt offered him a 15 year sentence as a plea agreement. (8/22/14 Tr. at 59:12-15). Rather, AUSA Lenhardt offered a plea deal and an agreement to a specific guideline range. (8/22/14 Tr. at 59:12-15).

[11] The Court has reviewed the original April 14, 2009 plea agreement in Criminal Number 08-423, filed under seal in the instant case. (Docket No. 64).

his supervisor to offer Defendant a plea agreement requiring him to plead guilty only to Counts One and Two, which Defendant accepted. *Waller*, Cr. No. 08-423, Docket No. 77; (8/22/14 Tr. at 61:20-62:9). As part of the agreement, Count Three, a violation of § 924(c) carrying a mandatory consecutive sentence of 60 months' imprisonment, would be dismissed. (8/22/14 Tr. at 62:6-13). In light of the change in case law relative to armed career criminals, Judge Bloch sentenced Defendant to a term of imprisonment of 63 months at both counts, to be served concurrently, and a three-year term of supervised release. *Waller*, Cr. No. 08-423, Docket No. 79.

Defendant was released from incarceration on January 28, 2013 and thereon began his term of supervised release. *Waller,* Cr. No. 08-423, Docket No. 81. Just six days later, on February 4, 2013, Defendant was arrested in connection with a shooting at the Phase Bar in Pittsburgh based, in part, on a tip from a witness with the initials R.N.[12] (Docket No. 61 at 2-5). Based on their reports and observations, the arresting City of Pittsburgh Police Officers filed charges in that case. (8/22/14 Tr. at 64:11-13). The United States Probation Office notified AUSA Lenhardt that Defendant had purportedly violated his federal supervised release.[13] (8/22/14 Tr. at 65:7-9). AUSA Lenhardt's role in the U.S. Attorney's Office's violent crime section requires him to determine if cases charged by state or local officers warrant federal prosecution. (8/22/14 Tr. at 62:17-21). As such, he began his review of Defendant's file to determine if the instant case should be brought in federal court. (8/22/14 Tr. at 65:11-14).

Lenhardt extensively testified about this review and decision-making process. (8/22/14 Tr. at 62-73). At the outset, the Court finds credible his testimony that his decision to seek an

---

[12] This Court has already made findings of fact relative to the events in question on February 3, 2013 in its Memorandum Opinion denying Defendant's Motion to Suppress. (Docket No. 61).
[13] In light of the instant case, Judge Bloch postponed Defendant's Supervised Release Revocation Hearing until further Order of Court on April 7, 2014. *Waller*, Cr. 08-423, Docket No. 95.

Indictment in this case was not motivated by Defendant's race, political or nonpolitical affiliation, or religious or nonreligious beliefs. (8/22/14 Tr. at 69:15-70:5). Likewise, the Court finds that his decision was not based on any alleged animus toward Defendant. (8/22/14 Tr. at 39:9-40:4). In fact, AUSA Lenhardt was asked if he was familiar with Defendant's claim that this instant case was a result of vindictive prosecution or some type of animus he harbors toward Defendant. (8/22/14 Tr. at 39:6-11). He responded that he was familiar those claims, but denied their validity, explaining:

> They're not true. Most of my career as a prosecutor has involved violent crimes. I have prosecuted perhaps 100 murders. Many, many times that number of gang members, most of what I dealt with was drug dealers, gang members and the like. Each person seems to get their own niche. Some people might be really good at domestic violence cases and speaking to those sorts of witnesses and victims. I seemed to have a knack for the subculture that involves guns, drugs and violence. I do believe that Mr. Waller is a violent, dangerous man, but he is no different than almost everybody I prosecuted in the district attorney's office and almost everybody I have prosecuted in the United States Attorney's office. I don't have any particular animus to him. I don't have any animus against him at all. I do believe that he is a violent, dangerous person, and my job is to prosecute those sorts of people.

(8/22/14 Tr. at 39:14-40:4).

Rather, his decision was based on various factors, including:

- Defendant was serving a term of supervised release, (8/22/14 Tr. at 65:2-3);
- the instant offense conduct occurred less than a week after he had been released from incarceration, (8/22/14 Tr. at 65:15-17, 69:5-14);
- there was probable cause to believe he committed the instant offense, (8/22/14 Tr. at 64:6-65:1);
- there was firm evidence of Defendant's involvement and he had a firearm, (8/22/14 Tr. at 66:1-5, 66:13-19);
- he consulted with ATF concerning the firearm, (8/22/14 Tr. at 66:20-67:23); Defendant is associated/affiliated with a gang, (8/22/14 Tr. at 68:14-69:4);

- Defendant had prior federal firearms charges, (8/22/14 Tr. at 69:8-9);
- the application of the objective criteria set forth at United States Sentencing Guideline Section 2K2.1,[14] (8/22/14 Tr. at 66:9-67:23);
- Defendant's recidivism, (8/22/14 Tr. at 70:13-15, 72:4-8);
- the circumstances of the arrest being that Defendant was observed driving past the scene of a homicide with a stolen gun on his person with another firearm in the vehicle, (8/22/14 Tr. at 69:10-14); and,
- he had prosecuted other defendants for conduct underlying the basis of a supervised release violation, (8/22/14 Tr. 71:23-24), which is common practice in the Western District of Pennsylvania, (8/22/14 Tr. at 71:24-72:8).

The Court further finds that the decision to seek an Indictment in this case was not made solely by AUSA Lenhardt. (8/22/14 Tr. at 70:22-71:14). While AUSA Lenhardt recommended the charge to his supervisor, ultimately the case was sent "through that chain of command and they would all get to make their determination." (8/22/14 Tr. at 70:24-71:7). Even if AUSA Lenhardt and his supervisors all agreed that the U.S. Attorney's Office should prosecute Defendant, the U.S. Attorney for the Western District of Pennsylvania made the final decision of

---

[14] USSG 2K2.1 factors include:
- if the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. 5845(a);
- if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;
- if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense; or the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; (II) is convicted under 18 U.S.C. 922(d); or (III) is convicted under 18 U.S.C. 922(a)(6) or 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person;
- if the offense involved a firearm described in 26 U.S.C. § 5845(a);
- if the defendant is convicted under 18 U.S.C. § 922(c), (e), (f), (m), (s), (t), or (x)(1).(b)
- If the offense involved three or more firearms;
- If any firearm (A) was stolen; or (B) had an altered or obliterated serial number;
- If the defendant engaged in the trafficking of firearms;
- If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense;

U.S.S.G. § 2K2.1.

whether or not the case would be presented to a grand jury. (8/22/14 Tr. at 71:7-12). The decision of which AUSA would be assigned to prosecute Defendant, should the grand jury indict him, was made by AUSA Lenhardt's supervisor. (8/22/14 Tr. at 72:12-17). Lenhardt brought it to his supervisor's attention that he had previously prosecuted Defendant. (8/22/14 Tr. at 72:14-15). However, he explained that, in his opinion, it's best to have somebody prosecute a particular defendant who knows that person's background and has a frame of reference. (8/22/14 Tr. at 72:18-22). His supervisor agreed, and assigned the instant case to him. (8/22/14 at 72:22-23).

The U.S. Attorney decided that the case should be presented to the grand jury. (8/22/14 Tr. at 71:10-14), and on February 18, 2014, a federal grand jury returned an Indictment charging Defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).[15] Defendant's Initial Appearance was held on March 13, 2014, (Docket No. 9), and at that time the Government provided him with discovery items within the purview of Local Rule 16.1 and additional materials, including the only police report generated as a result of R.N.'s statements made prior to the traffic stop of Defendant.[16] (Docket Nos. 10, 55 at 1). He was arraigned on March 17, 2014, (Docket No. 12), and was advised that pretrial motions were due within fourteen days. (Docket Nos. 12, 15, 55 at 1). On March 27, 2014, he timely filed a Motion to Suppress, (Docket No. 18), thereby tolling the Speedy Trial Act clock. 18 U.S.C. §

---

[15] Defendant had been convicted of several prior felonies, including Possession of a Firearm by a Convicted Felon and Possession with Intent to Distribute Heroin, a Schedule I controlled substance, at Criminal Number 08-423 in the Western District of Pennsylvania on December 5, 2011; Weapons Provided to an Inmate at Docket No. 2005-14606 in the Court of Common Pleas of Allegheny County, Pennsylvania on March 21, 2007; and Fugitive not to Possess a Firearm at Docket No. 2005-03769 in the Court of Common Pleas of Allegheny County, Pennsylvania on March 21, 2007. (Docket No. 1). The aforementioned crimes are all punishable by imprisonment for a term exceeding one year. (*Id.*).

[16] Following the April 24, 2014 Hearing in this matter, AUSA Lenhardt took Defendant and his able stand-by counsel, Martin Dietz, Esq. (appointed as of April 8, 2014), to the U.S. Attorney's Office to view all videos in this case and provided Defendant with a copy of "every single video that could possibly have anything to do with this case." (8/22/14 Tr. at 82:17-18:5); (Docket No. 21).

3161(g)(1)(D). Since that time, he has filed six other pretrial Motions. (Docket Nos. 23, 30, 31, 53, 72, 81).[17]

## B. PROCEDURAL HISTORY

On May 28, 2014, Defendant filed a Motion to Dismiss the Indictment on the Grounds of Vindictive and Selective Prosecution, (Docket No. 31), to which the Government filed a Response on July 7, 2014, (Docket No. 42). He filed a Reply on July 24, 2014, (Docket No. 48). As noted, on July 23, 2014, this Court convened a Hearing, (Docket No. 47), on Defendant's Motion to Dismiss, which was continued until August 22, 2014 so that Defendant could call AUSA Lenhardt as a witness. (Docket No. 56). Following the Hearing, the Court ordered the Government to file the original plea offer from Defendant's case at Criminal Number 08-423 and the statistics of 18 U.S.C. § 922(g) prosecutions in the Western District, (Docket No. 57) which it did, (Docket Nos. 64, 70).

The Court also ordered preparation of the transcript and the parties were ordered to file Proposed Findings of Fact and Conclusions of Law by October 14, 2014, with responses to same due by October 28, 2014. (Docket No. 57). Defendant timely filed his Proposed Findings of Fact and Conclusions of Law on October 14, 2014. (Docket No. 75). Given Defendant's filing of his Motion to Recuse, the Court granted the Government's Motion for Leave to File a Consolidated Response, containing a Response to Defendant's recusal Motion and its Proposed Findings of Fact and Conclusions of Law. (Docket Nos. 74, 76). The Government filed same on October 21, 2014. (Docket No. 78). Objections were due on October 28, 2014, but none were filed. As such,

---

[17] The present Motions challenge, among other things, the Government's decision to seek the Indictment because of Assistant United States Attorney Ross Lenhardt's ("AUSA Lenhardt") alleged vindictiveness. (Docket No. 31). Defendant claims that this Court should recuse itself on the basis that it permitted AUSA Lenhardt to engage in prosecutorial misconduct by suborning perjury. (Docket No. 72). The common theme throughout all of Defendant's Motions is that he believes the Government fabricated a statement made by a witness against him, R.N., whose identity has not been disclosed at this stage of the prosecution.

the Court took this Motion under advisement on October 29, 2014. As it has been fully heard, briefed, and argued, it is now ripe for decision.

## C. DISCUSSION

### 1. Legal Standard

The Fifth Amendment to the United States Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. CONST. amend. V. The grand jury serves as a referee or buffer between the government and the people. *United States v. Williams*, 504 U.S. 36, 47 (1992). It is an accusatory body that sits "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id.* at 51; *Bracy v. United States*, 435 U.S. 1301, 1302 (1978). In light of "the grand jury's singular role in finding the probable cause necessary to initiate a prosecution," courts generally lack authority "for looking into and revising" the grand jury's judgment. *Kaley v. United States*, —— U.S. ——, 134 S.Ct. 1090, 1097 (2014) (citing *Costello v. United States*, 350 U.S. 359, 362–63 (1956)).

A defendant who seeks to set aside an indictment bears a heavy burden. *United States v. Kubini, et al.*, 2014 WL 1910287, at *29 (W.D. Pa. May 13, 2014) (citing *United States v. Fenton*, 1998 WL 356891, *4 (W.D.Pa. June 29, 1998) (Smith, J.)). A district court generally lacks supervisory power over grand jury proceedings. *Williams*, 504 U.S. at 47 ("as a general matter at least, no such 'supervisory' judicial authority exists"). Courts may exercise this narrow degree of authority only "if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255–56 (1988) (citing *United States v. Mechanik*, 475 U.S. 66 (1986)). Well-developed case law

establishes that "only where violations of positive law embodied in a rule of criminal procedure, a statute or the Constitution are raised may a court review an indictment with a view toward possible prejudice in the grand jury proceedings." *Fenton*, 1998 WL 356891, at *6 (citing *In re Grand Jury*, 103 F.3d 1140, 1145 (3d Cir. 1997) ("Judicial supervision and interference with grand jury proceedings should always be kept to a minimum.")). "Whatever supervisory power does exist, it does not permit judicial review of errors which impact only upon the quality and reliability of the evidence considered by the grand jury." *Id.*

### 2. Selective Prosecution

The Court first addresses Defendant's claim that AUSA Lenhardt violated his constitutional rights by selectively prosecuting him. (Docket No. 31 at 2). "Prosecutors are presumed not to violate equal protection." *United States v. Gist*, 382 F. App'x 181, 183 (3d Cir. 2010). Selective prosecution claims require the defendant to meet a "high standard[]" of demonstrating: (1) "that 'persons similarly situated have not been prosecuted;'" and (2) "that 'the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor.'" *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012) (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). "To establish that a prosecution is unlawfully discriminatory in this way, '[t]he claimant must demonstrate that the federal prosecutorial policy ha[s] a discriminatory effect and that it [is] motivated by a discriminatory purpose.'" *Gist*, 382 F. App'x at 183 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). The defendant is required to make this showing by clear evidence, and must overcome "the presumption of regularity that attaches to decisions to prosecute." *Taylor*, 686 F.3d at 197 (citing *Armstrong*, 517 U.S. at 464).

The Third Circuit in *Schoolcraft* establishes that one element of a selective prosecution claim is that similarly situated persons have not been prosecuted. *Schoolcraft*, 879 F.2d at 68; *See also*, *Taylor*, 686 F.3d at 197 (relying on *Schoolcraft*). However, Defendant has not made any allegations with respect to other similarly situated persons in his Motion, Reply, or any other submissions or evidence presented this Court. (Docket Nos. 31, 48). He likewise has not claimed that the decision to prosecute him was based on an unjustifiable standard such as race, religion, or some other arbitrary factor. *See Schoolcraft*, 879 F.2d at 68. Rather, his arguments center squarely on his prior dealings with AUSA Lenhardt. (Docket Nos. 31, 48).

The Government filed a document containing the statistics of prosecutions of violations of 18 U.S.C. § 922(g) in the Western District of Pennsylvania for the past five (5) years. (Docket No. 57), and this Court has reviewed same. The document reveals that 192 convicted felons have been prosecuted in the Western District of Pennsylvania for violating § 922(g)(1) since 2008. (*Id.*); (Docket No. 77 at 14). This Judge has presided over numerous § 922(g)(1) cases and recently tried such a case in September 2014 at Criminal Number 13-70, *United States v. Gorny*. In light of the prevalence of § 922(g)(1) cases in the Western District and Defendant's failure to demonstrate that similarly situated individuals are not prosecuted, his Motion must be denied.[18]

Defendant also has failed to both allege and show that the Government's decision to prosecute him was made based on an impermissible factor. *Schoolcraft*, 879 F.2d at 68. The Court heard credible testimony from AUSA Lenhardt that in making the recommendation to

---

[18] Because Defendant has not presented any evidence as to other similarly situated persons, he is not entitled to discovery on this claim. *See United States v. Thompson*, 2013 WL 784630, *5 (M.D. Pa. Mar. 1, 2013) ("Thompson is not entitled to further discovery because he has failed to present a 'credible showing' that the government treated similarly situated Caucasian defendants differently. . . . Thompson relies entirely on his own affidavit, which broadly claims that Thompson has done a "vigorous study" of 'various facilities' and has discovered 'unanimous fact' that Caucasians suspected of crack cocaine offenses are treated differently. . . . Thompson does not provide the court with specific results of his study, only conclusory and self-serving observations. Thus, he is unable to establish that the government's prosecutorial policy has a discriminatory effect and his selective prosecution claim is without merit.").

indict Defendant, he did not do so based on Defendant's race, political or nonpolitical affiliation, or religious or nonreligious beliefs. (8/22/14 Tr. at 69:15-70:5). With no evidence to the contrary presented, this Court accepts AUSA Lenhardt's credible testimony.

With respect to selective prosecution, Defendant's Motion is thus denied. The Court now turns to Defendant's vindictive prosecution argument.

### 3. Vindictive Prosecution

Defendant asserts that AUSA Lenhardt initiated this prosecution in retaliation for the sequence of events in the prior federal case in which they were involved, *United States v. Waller*, Cr. No. 08-423.[19] (Docket No. 31 at 3). Specifically, Defendant alleges that AUSA Lenhardt is retaliating against him, because his original conviction was overturned on appeal. (*Id.*). In response, the Government denies all of Defendant's contentions and argues that, because Defendant's position is based on AUSA Lenhardt's decision to indict, he cannot rely on the presumption of vindictiveness and must show that the Government's decision to seek an indictment in this case "was actually vindictive." (Docket No. 42 at 8) (quoting *United States v. Sellers*, 501 F.App'x 194, 197 (3d Cir. 2012).

A vindictive prosecution claim turns on whether "'the government penalizes a defendant for invoking legally protected rights.'" *McKay*, 2013 WL 2393002, at *5 (quoting *Schoolcraft*, 879 F.2d at 67)). To make out this claim, the defendant initially must show the appearance of

---

[19] Defendant cites to *United States v. Robison*, 644 F.2d 1270 (9th Cir. 1981) to support his contention that these facts suffice to show an appearance of vindictiveness and thus satisfy his initial burden. (Docket No. 31 at 4). *Robison*, however, is not helpful to Defendant. Initially, the facts in that case were similar to those here, but the Ninth Circuit found that the defendant had not met his burden on a vindictive prosecution claim. *Robison*, 644 F.2d at 1272. The court explained that a presumption of vindictiveness arises "when the 'totality of circumstances surrounding the prosecutorial decision at issue' suggest the 'appearance of vindictiveness.'" *Id.* (quoting *United States v. Griffin*, 617 F.2d 1342 (9th Cir. 1980). The court expounded that this presumption of vindictiveness arises when the procedural rights and later indictment share a common nucleus of operative facts. *Id.* ("In almost every case in which courts have condemned prosecutions as vindictive, the defendant, after exercising some procedural right, had been confronted with a more serious or an additional charge arising out of the same nucleus of operative facts as the original charge."). Applying this standard to the present case, no such presumption arises.

vindictiveness. *Id.* To establish that the decision to prosecute was not based on the usual determinative factors, the defendant "must make 'a substantial threshold showing of an improper motivation on the prosecutor's part.'" *Id.* (citing *United States v. Mariani*, 121 F. Supp.2d 803, 809 (M.D. Pa. 2000); *United States v. Difeaux*, 163 F.3d 725, 729 (2d Cir. 1998)). The evidence must show that, absent the improper motive, the defendant would not have been prosecuted. *Id.*

Case law has established that vindictive prosecution is not shown simply through establishing that a defendant exercised his legal rights and was subsequently indicted. *See United States v. McKay*, 2013 WL 2393002, *6 (M.D. Pa. June 3, 2013) ("The mere fact that defendant was subsequently indicted after he arguably exercised a legal right is insufficient, in and of itself, to establish a vindictive prosecution claim."); *See United States v. Baskerville*, 2007 WL 150439, at *2 (D.N.J. Jan. 17, 2007) ("Prosecutorial vindictiveness is not established simply because a defendant exercised a legal right and was subsequently indicted for an additional offense.").

As an initial matter, Defendant's contentions are entirely based on speculation. (Docket Nos. 31, 48). *See United States v. Kennedy*, 2014 WL 1758136, at *3 (W.D. Pa. May 1, 2014) (J. Fischer). In addressing Defendant's contention that AUSA Lenhardt decided to prosecute him in this case based on prior state and federal cases, (Docket No. 31 at 4), the Court finds such argument to be wholly without merit. First, this Court rejects Defendant's argument that AUSA Lenhardt's testimony in a state court proceeding is proof of vindictiveness. (Docket No. 31 at 2-3). This Court accepted AUSA Lenhardt's credible testimony that his testimony in that case was not directly against or even about Defendant. (8/22/14 Tr. at 51:22-24).

Relative to the federal case before Judge Bloch, which AUSA Lenhardt also prosecuted, Defendant avers that the lower sentence he received on remand demonstrates that AUSA Lenhardt vindictively and selectively prosecuted him here. (*Id.* at 3). This simply is not the case.

The different sentences are clearly indicative of the fact that, on remand, Defendant only pled guilty to two charges, as opposed to three of which the jury originally convicted him. *Waller*, Cr. No. 08-423. The charge that was dropped, the § 924(c) violation, carried a mandatory five year sentence. (8/22/14 Tr. at 62:10-13). Furthermore, during the relevant time period, the Supreme Court and the Third Circuit issued opinions, including *Begay v. United States*, 553 U.S. 137 (2008) and *United States v. Johnson*, 587 F.3d 203 (3d. Cir. 2009), on the subject of what crimes were to be considered "crimes of violence" relative to the determination of whether an individual was an Armed Career Criminal. (8/22/14 Tr. at 58:20-25, 59:19-22). This Court heard credible testimony from AUSA Lenhardt that he proposed a plea agreement based on his reasonable belief as to what the appropriate guideline range was for Defendant at the time of the initial trial. (8/22/14 Tr. at 58:25-59:15). He testified that this was consistent with Judge Bloch's recommendations as to an appropriate guideline range. (8/22/14 Tr. at 59:21-25). When the case was remanded, the change in the relevant law was taken into account in the Government's plea offer. (8/22/14 Tr. at 61:20-62:9). The Court notes that AUSA Lenhardt did not seek a superseding indictment against Defendant, nor did he seek any sentencing enhancements after remand. (8/22/14 Tr. at 61:14-18).

Moreover, the Court finds that the decision to prosecute Defendant in this case was made based solely on legitimate law enforcement concerns. AUSA Lenhardt credibly testified that he had probable cause that Defendant committed the underlying violation. (8/22/14 Tr. at 64:6-65:1). The Supreme Court has noted that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also Halsey v. Pfeiffer*, 750

F.3d 273, 300 (3d Cir. 2014) (same). Further, he testified that Defendant's recidivism was a motivation for prosecution. (8/22/14 Tr. at 70:13-15, 72:4-8); *see Ewing v. California*, 538 U.S. 11, 26 (2003) ("Recidivism is a serious public safety concern in California and throughout the Nation."); *see also United States v. MacEwan*, 445 F.3d 237, 248 (3d Cir. 2006) (holding that the punishment of recidivism "has long been recognized as a legitimate basis for increased punishment.") (citing *Ewing*).[20] The Court has also found that the decision to present the case to a grand jury was made ultimately by the U.S. Attorney for the Western District, and the decision to indict Defendant was made by the grand jury. (8/22/14 Tr. at 71:10-14).

The Court notes that Defendant did not raise any claim of vindictiveness or selective prosecution during any of the initial proceedings in this case handled by AUSA Lenhardt, such as the March 13, 2014 Initial Appearance before Chief Magistrate Judge Maureen Kelly, (Docket No. 9), during which he provided Defendant with the Rule 16 materials, (Docket No. 10), or his March 17, 2014 arraignment, (Docket Nos. 12, 13).

At the present stage, Defendant claims that AUSA Lenhardt has destroyed evidence, including motor vehicle recordings ("MVRs") in retaliation. (Docket No. 31 at 4); (8/22/14 Tr. at 19:18-25). However, Defendant offers no support for this claim, other than his own conclusory statements and beliefs. (Docket No. 31). Further, AUSA Lenhardt credibly testified that after the April 24, 2014 hearing, he took Defendant and his stand-by counsel[21] to the U.S. Attorney's Office and provided Defendant with a copy of "every single video that could possibly have anything to do with this case." (8/22/14 Tr. at 82:17-83:5). Defendant has acknowledged that this occurred. (8/22/14 Tr. at 82:7-16).

---

[20] As noted in Section 3A, *supra*, the Court also accepts AUSA Lenhardt's credible testimony about what he considered in making his decision to recommend Defendant's instant prosecution.

[21] *See* n. 16, *supra*.

Yet, Defendant alleges that AUSA Lenhardt is withholding a witness statement from him. (Docket No. 31 at 4).[22] Defendant claims in his Reply that Mr. Lenhardt stated on May 20, 2014 on the record that he does not have the statement. (Docket 48 at 3). Based on this Court's review of the transcript, Defendant confused Officer Obsenica's interview with R.N. about the homicide the day after the Defendant's arrest with the oral interview he gave to Officer Obsenica prior to his arrest, when he told the officer that he saw the red/maroon Malibu near the shooting. (5/30/14 Tr. at 115:25-116:21, 123:8-20) (AUSA Lenhardt testifying: "Mr. R.N. was interviewed on the scene by Officer Obsenica. That interview was not recorded on a video or audio, it was merely an interview on the scene of a shooting. There was no handwritten statement done by Mr. R.N. and Officer Obsenica has reduced that interview to the report the defendant already has. It wasn't until the next day that any police officer again interviewed Mr. R.N. That particular day, it was by homicide detectives."). AUSA Lenhardt also testified that "If we go to trial in this matter and Mr. R.N. is called to the stand, I agree that those other statements could be considered Jencks. But regardless of whether they are or are not, I agree to turn them over if we go to trial in this particular matter." (5/30/14 Tr. at 116:17-21). There is no evidence to suggest that AUSA Lenhardt has destroyed or withheld evidence. To the contrary, he has sufficiently explained and produced all discovery required of him to this point and promised to produce all Jencks material at the appropriate time.[23] Based on AUSA Lenhardt's credible testimony and the lack of evidence set forth by Defendant, the Court finds no basis to conclude that AUSA Lenhardt is withholding evidence from Defendant in violation of the Jencks Act, 18 U.S.C. § 3500(b).

---

[22] Given the sensitive nature of much of the discovery, AUSA Lenhardt filed a Motion for a Protective Order, (Docket No. 28). This Court granted the Motion and in doing so ordered that Defendant be provided all discovery on a laptop for his viewing. (Docket No. 60).

[23] Following the disposition of all of Defendant's Motions, this Court will promptly schedule a Status Conference to set this matter for trial. As this Court stated on the record at the August 22, 2014 Hearing, this Court will issue a detailed Pretrial Order setting forth deadlines for disclosure of Jencks Act materials, Rule 404(b) evidence, and *Brady/Giglio* impeachment materials. (8/22/14 Tr. at 86:4-10).

### 4. Conclusion

In light of the above, Defendant's Motion as it relates to selective and vindictive prosecution must be denied.

### IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Recuse, (Docket No. [72]), and Motion to Dismiss the Indictment on the Grounds of Vindictive and Selective Prosecution, (Docket No. [31]), are denied, with prejudice.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date:   November 20, 2014

cc/ecf:  All counsel of record.
   Michael Tyrone Waller (USM # 30240-068)
   Butler County Prison
   202 S. Washington Street
   Butler, PA 16001