IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 14-40 |
| | ) Judge Nora Barry Fischer |
| MICHAEL TYRONE WALLER, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

### I. INTRODUCTION AND PROCEDURAL HISTORY

On August 29, 2014, this Court denied *pro se* Defendant Michael Tyrone Waller's Motion to Suppress. (Docket No. 61). In that opinion, the Court made two findings: (1) the stop of the vehicle in which Mr. Waller was riding was constitutional; and (2) Mr. Waller was not seized for purposes of the Fourth Amendment until after he was forcibly removed from the vehicle, maced, and tased. (*Id.*).

Presently before the Court is Defendant's Motion to Dismiss Indictment for Miscarriage of Justice, and False Information, (Docket No. 99), which the Court construes as a Motion for Reconsideration of its Opinion, [1] (Docket No. 61), denying his Motion to Suppress, (Docket No. 18). Upon consideration of all of the parties' submissions, the evidence of record, their arguments, and for the following reasons, Defendant's Motion for Reconsideration will be denied.

Having previously set forth at length the procedural history and relevant facts in this case in its rulings on Defendant's other pretrial Motions, the Court does not repeat same herein. (*See*

---

[1] *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding *pro se* complaint to less stringent standards than formal pleadings drafted by a lawyer); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992) ("We must construe the allegations in Day's pro se petition liberally, and we may not subject his petition to the standards that we would apply to pleadings drafted by lawyers."); *United States v. Swint,* 2007 WL 675340, at *4 (E.D.Pa. Feb. 27, 2007) ("Because defendant filed the instant Motion for Reconsideration *pro se*, the Court will construe defendant's arguments liberally.") (citing *Haines*).

1

Docket Nos. 61, 84). As to the Motion pending before this Court, on March 27, 2014, Defendant filed his initial Motion to Suppress. (Docket No. 18). After considering responsive briefing, (Docket No. 20), convening a hearing, (Docket No. 32), and receiving proposed findings of fact and conclusions of law, (Docket Nos. 44, 52), the Court denied Defendant's Motion, (Docket Nos. 61, 62).

The Court convened what was to be a Pretrial Status Conference on December 29, 2014, as a bench trial had been set to start on January 5, 2015. (Docket No. 92). However, at the Status Conference, Defendant notified both the Court and the Government that he had written and mailed the instant Motion, which had not yet been docketed. (Docket No. 97). On December 30, 2014, the Clerk's Office received and filed the instant Motion for Reconsideration of the denial of his Motion to Suppress, which was dated December 24, 2014. (Docket No. 99). The Motion generally argues that Defendant "has direct evidence that officers fabricated the existence of" "R.N.," the tipster that police officers claimed provided a description of the car in which Mr. Waller was found. (*Id.*). The Government responded to this Motion on January 9, 2015. (Docket No. 103).

The Court held a Status Conference on January 20, 2015, wherein, *inter alia*, the Government allowed Defendant to review a redacted copy of the grand jury testimony of "R.N.,"[2] and Defendant moved the affidavit of Tamika McAfee into evidence. (Docket No. 105). Based on Defendant's representations at the January 20, 2015 Status Conference, the Court convened an Evidentiary Hearing on February 9, 2015, to receive further evidence on Defendant's Motion for Reconsideration. (Docket No. 114). At the Evidentiary Hearing, no additional evidence was presented, because Defendant's only expected witness, Tamika McAfee

---

[2] Although not admitted into evidence, the Government also provided a copy of same to the Court.

did not appear.[3] At the conclusion of the Hearing, the Court ordered supplemental briefing. (Docket No. 115). The Government filed its Supplemental Reply on February 17, 2015, (Docket No. 116), and the Defendant filed his on February 18, 2015, (Docket No. 118).

On February 24, 2015, without leave of Court, Defendant filed a "Memorandum of Law in Support of Motion to Suppress." (Docket No. 119). As the Court ruled on the only Motion to Suppress in this case in August 2014, the Court treats this filing as an additional supplemental brief in support of Defendant's Motion to Reconsider. The Government substantively responded to same on March 10, 2015. (Docket No. 121). Accordingly, the Defendant's Motion is now ripe.

**II. LEGAL STANDARD**

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Kabacinski v. Bostrom Seating, Inc.*, 98 F.App'x 78, 81 (3d Cir. 2004) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Because "federal courts have a strong interest in the finality of judgments," *United States v. Hoey*, Cr. No. 09-200, 2011 WL 748152, at *2 (W.D.Pa. Feb. 15, 2011) (citation omitted), the standard that must be met to prevail on a motion for reconsideration is high, *see Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004).

The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *United States v. Banks*, Crim No. 03-245, 2008 WL 5429620, at *1 (W.D.Pa. Dec. 31, 2008) (citing *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d

---

[3] Defendant's stand-by counsel informed the Court that he had spoken via telephone with a person identified as "Flip" the weekend before. Flip indicated that Ms. McAfee had recently lost a baby and that Flip was not willing to involve her in this case. No further attempt was made to subpoena Ms. McAfee.

669, 677 (3d Cir. 1999)). Motions for reconsideration are not a tool to re-litigate and reargue issues which have already been considered and disposed of by the Court, *see Hoey*, 2011 WL 748152, at *2 (citation omitted), to express disagreement with the Court's rulings, *see United States v. Perminter*, Cr. No. 10-204, 2012 WL 642530, at *7 (W.D. Pa. Feb. 28, 2012), or for addressing arguments that a party should have raised earlier, *see United States v. Dupree*, 617 F.3d 724, 732-33 (3d Cir. 2010) (quotations omitted). Rather, such a motion is appropriate only where the court misunderstood a party or where there has been a significant change in law or facts since the Court originally ruled on that issue. *Hoey*, 2011 WL 748152, at *2.

### III. ANALYSIS

Initially, the Court notes that Defendant has not argued that there has been an intervening change of law which has an impact on the Court's decision to deny his Motion to Suppress. Accordingly, that is clearly not an appropriate avenue for reconsideration in this case.

    *a. Defendant's Motion to Suppress*

As the Court construes it, Defendant's Motion seeks reconsideration of the Court's Ruling on his prior Motion to Suppress. (Docket No. 99). In his prior Motion, Defendant sought to exclude the firearm police obtained as a result of their interactions with Defendant in the early morning of February 4, 2013. (Docket No. 18). He specifically argued that the officers who stopped the vehicle he was in "lacked the requisite level of probable cause or reasonable suspicion to initiate the stop." (*Id.* at 3). Defendant based this argument on his contention that the eyewitness who allegedly provided police the tip that ultimately led to the stop of the vehicle was anonymous, and that the police did not have any evidence corroborating this tip. (*Id.* at 4).

After an evidentiary hearing, during which the parties provided witness testimony, documentary exhibits, and oral argument, (Docket Nos. 32, 33), the Court issued a Memorandum Opinion and Order, (Docket Nos. 61, 62), denying Defendant's Motion to Suppress. The Court

found "that the officers did not seize Waller for purposes of its Fourth Amendment analysis until they arrested him after the firearm fell from his person. Accordingly, all conduct prior to said arrest may be included in the reasonable suspicion analysis of the *Terry* stop." (Docket No. 61 at 12 (citing *United Sates v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000)). Coming to that conclusion, the Court rejected Defendant's Motion to Suppress the firearm, which he is charged with illegally possessing in violation of 18 U.S.C. § 922(g)(1). (*Id.*).

After holding that Defendant's challenge failed because the Defendant was not seized for Fourth Amendment purposes until after he was removed from the vehicle, maced, and tased, the Court performed an analysis of the stop of the vehicle. (Docket No. 61 at 12). Weighing the totality of the circumstances,

> the Court [found] it reasonable that the officers would have believed that Waller may have been armed and dangerous and posed a threat to them or others based on the totality of the circumstances faced by the officers, particularly: (1) the vehicle that they pulled over matched the description of one of the two vehicles that R.N., a witness at the scene of the shooting, saw fleeing from the parking lot outside of Phase Bar; (2) the report from R.N. indicated that two black males were near the two vehicles in the area from which the shots originated, and there were two black males in the vehicle; (3) the vehicles fled at a high rate of speed; (4) Waller engaged in suspicious behavior, including his repeated touching of his left side and defiance of the officers' commands to keep his hands on the dashboard and the vehicle; (5) Waller refused to provide accurate identification information to the police; (6) the traffic stop took place in close vicinity to the bar (four to [f]ive blocks away) and in close proximity to the events at the bar (approximately twelve minutes after Officer Obsenica's response to the initial report of criminal conduct); (7) the stop occurred at approximately 2:09 a.m.; and (8) the area is known to be a high-crime area.

(*Id.* at 17).

## b. Defendant's Instant Motion[4]

In the instant motion, Defendant argues that he "has direct evidence that officers fabricated the existence of [R.N.]." (Docket No. 99 at 3). Defendant also contends that the officers' testimony at the suppression hearing constituted inadmissible hearsay. (*Id.* at 4). The Government responds with several counter arguments. (Docket No. 102).

### i. Hearsay Argument

Other than the unsubstantiated assertion in his motion, Defendant did not present any argument regarding this point. However, the Court first notes that Defendant failed to object on this basis at the May 30, 2014 hearing on his Motion to Suppress. (*See* Docket No. 41 at 59:20–65:24 (direct examination of Officer Obsenica)). In fact, Defendant offered two of the police reports into evidence himself. (Docket No. 32-1). Accordingly, Defendant waived the right to subsequently make this argument. *See United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

The Court also notes that there is "no automatic rule against the reception of hearsay evidence in" suppression hearings. *United States v. Matlock*, 415 U.S. 164, 175 (1974); *United States v. Cannon*, 220 Fed.Appx. 104, 107–09 (3d Cir. 2007).

As Defendant has the burden of proof to support his Motion for Reconsideration, and he has presented neither argument nor authority in support of his position, the Court denies his motion insofar as he relies on this theory.

### ii. Alleged "New Evidence"

#### 1. The Evidence

---

[4] Initially, as Defendant styled his Motion as one seeking dismissal pursuant to FED.R.CRIM.P. 48(b). (Docket No. 99), the Government argues that none of the requirements for dismissal pursuant to Rule 48(b) have been met, (Docket No. 102 at 2–3). At the January 20, 2015 hearing, Defendant stated that he intended the Motion be brought under Rule 47. (Docket No. 111 at 37:14–19). Regardless, the Court holds that neither Rule 47 nor Rule 48(b) permit the relief Defendant requests (*i.e.*, dismissal of the indictment).

In his Motion, the only "new evidence" Defendant pointed to was Tamika McAfee's Affidavit. (Docket No. 99). However, after reviewing the redacted grand jury testimony of R.N., Defendant made additional arguments incorporating the contents of that testimony. (Docket Nos. 118, 119).

The Government argues that Ms. McAfee's Affidavit does not constitute "new" evidence for the purpose of a motion for reconsideration. (Docket No. 102 at 14). The Court notes that, at the time of the Government's Response, Defendant had not produced the affidavit of Tamika McAfee. It was later entered into evidence at the January 20, 2015 hearing. (Docket No. 105-2). The affidavit states, in whole:

> My name is Tamika McAfee I am and was the victim in the Feb 3, 2014 shooting on Hamilton St in Homewood across the street from the bar "THE PHASE" I am writing to inform you whomever may be concerned that I never stated that I seen a shooter or even a vehicle leaving the seen. It was almost 2 am dark, snowing and my glasses were knocked off my face when I fell from being shot. I never told the police that I seen anyone or a car for that matter. Sorry I couldnt be anymore assistance to you.

(*Id.* (all errors in original)). For the reasons outlined below, even if the Affidavit constitutes "new" evidence, it is wholly consistent with the Court's previous holding and, thus, unsupportive of reconsideration.

It is undisputed that R.N.'s grand jury testimony occurred after the hearing on Defendant's Motion to Suppress. (*See* Docket No. 116 at p. 11, ¶20). Thus, it was clearly unavailable at that time and may be considered in deciding Defendant's Motion for Reconsideration. *See Max's Seafood Café, by Lou-Ann, Inc.*, 176 F.3d at 677.

2. The Impact of the Evidence

    a. <u>Existence of R.N.</u>

7

Defendant argues that the officers fabricated the existence of R.N. (Docket No. 99 at 3). The Government contends that, as the Court has already made credibility determinations regarding the officers that testified at the suppression hearing, Defendant's "unsubstantiated claims that [they] gave 'false' testimony should not alter this Court's earlier credibility determination." (*Id.* at 3). Further, it suggests that the Court give Defendant's alleged "direct evidence" (*i.e.*, a sworn statement of Tamika McAfee) that R.N. does not exist "little heed." (*Id.*). Specifically, the Government suggests that "this new sworn statement would appear to conflict with a minor portion of the information McAfee furnished to Officer Obsenica at the scene."[5] (*Id.* at 4). The Government argues that "[t]he discrepancies between these accounts are irrelevant," because "they do not provide the purported 'direct evidence' that RN does not exist and do not even contradict that __RN__ provided information to the police." (*Id.* at 5 (emphasis in original)).

Additionally, in its response, the Government offered "to provide the defense with an opportunity to review (but not copy or take notes of) a redacted portion of the Grant Jury testimony of RN, in the courtroom, in order to prove that RN exists and was the person who provided police with the information stated." (Docket No. 102 at 9). The Government delivered on its promise at the January 20, 2015 Status Conference, and observed Defendant as he reviewed the redacted transcript with his stand-by counsel.[6] (Docket No. 105 at 2).

At the February 9, 2015 Evidentiary Hearing, Defendant called no witnesses and presented no evidence. (Docket No. 114). In light of the Government's request to respond to

---

[5] That portion of Officer Obsenica's police report for the night states: "[Tamika McAfee] reported that she was drinking at the Phase Bar with a neighborhood friend, [R.N.]. [McAfee] reported that she left The Phase Bar at approximately 0150 hrs and was walking to [redacted] vehicle." (Docket No. 32-4).

[6] Additionally, the Government supplied a copy of same to the Court. *See supra*, n.2.

Defendant in writing, the Court permitted the parties to submit supplemental briefing. (Docket No. 115).

In its supplemental brief, the Government argues that it has adequately proven that R.N. exists and that Defendant has submitted no evidence to the contrary. (Docket No. 116 at 12). While not blatantly clear, Defendant seems to concede in his supplemental briefs that R.N. does exist. (Docket Nos. 118 at 2; 119 at 5). To the extent Defendant does not concede R.N.'s existence, the Court agrees with the Government that R.N. exists and Defendant has not shown otherwise. Accordingly, this argument provides no basis for reconsideration of the Court's Order denying Defendant's Motion to Suppress.

b. <u>Constitutionality of the Stop</u>

In denying Defendant's Motion to Suppress,

> the Court [found] it reasonable that the officers would have believed that Waller may have been armed and dangerous and posed a threat to them or others based on the totality of the circumstances faced by the officers, particularly: (1) the vehicle that they pulled over matched the description of one of the two vehicles that R.N., a witness at the scene of the shooting, saw fleeing from the parking lot outside of Phase Bar; (2) the report from R.N. indicated that two black males were near the two vehicles in the area from which the shots originated, and there were two black males in the vehicle; (3) the vehicles fled at a high rate of speed; (4) Waller engaged in suspicious behavior, including his repeated touching of his left side and defiance of the officers' commands to keep his hands on the dashboard and the vehicle; (5) Waller refused to provide accurate identification information to the police; (6) the traffic stop took place in close vicinity to the bar (four to [f]ive blocks away) and in close proximity to the events at the bar (approximately twelve minutes after Officer Obsenica's response to the initial report of criminal conduct); (7) the stop occurred at approximately 2:09 a.m.; and (8) the area is known to be a high-crime area.

(Docket No. 61 at 17). As the "new evidence" relied upon by Defendant generally implicates the credibility of the testimony and reports of Officers Obsenica and Rummel (*i.e.*, what the

9

witnesses at the scene of the shooting told them), only the first three points relied on in the Court's previous decision are at issue.

Under *Terry v. Ohio*, police officers may stop and briefly detain and pat down an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot. 392 U.S. 1 (1968). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Clearly, then, the only relevant inquiry is as to what the officers on the ground knew at the time the vehicle was stopped. *Id.*

To the extent Tamika McAfee's Affidavit constitutes "new" evidence, it is wholly consistent with the testimony the Court heard at the suppression hearing. In her Affidavit, Ms. McAfee states that she: was one of the victims of the shooting; never stated that she saw a shooter; and never told the police that she saw a vehicle. (Docket No. 105-2). At the suppression hearing, Officer Obsenica testified that, upon reaching the scene, he "found victim Tamika McAfee laying on the ground," with a gunshot to her right thigh. (Docket No. 41 at 59:11–13). He further testified that "[s]he told me that she heard four or five shots and she felt immediate pain and fell to the ground." (*Id.* at 60:12–13). When asked whether "she gave [] any kind of information at all about who did it, where these people were, or anything of that sort, when she was still on the scene," Officer Obseinca responded "[n]o, she did not." (*Id.* at 50:14–17). That is the full extent of Officer Obesnica's testimony regarding Ms. McAfee, and it is fully

consistent with her Affidavit.[7] As such, it does not present a new evidentiary basis or evince a clear error of fact or law on which the Court will reconsider its prior ruling.

The redacted grand jury transcript of R.N, likewise does not present a basis on which the Court will reconsider its prior ruling. Crucially, the transcript does not specify what R.N. told Officers Obsenica or Rummel on the scene. (Redacted Grand Jury Transcript of R.N. at 25:23–26:1). Per the redacted transcript, R.N.'s testimony was basically that: he was at the Phase Bar the night of the shooting; he saw Tamika McAfee in the bar; at closing time, they left the bar; the shooting occurred; he attempted to render medical aid to Ms. McAfee; he did not see who did the shooting; and he saw two cars, one of which was red. (*Id.*, *passim*). While this testimony does not specifically corroborate all of the Officers' testimony at the suppression hearing or the material contained within their reports, it does not refute same.

Additionally, at the suppression hearing, Defendant moved to admit Officer Obsenica's Investigative Report and the "Detailed History" from the event in question, describing the 911 calls and police radio transmissions for same. (Docket No. 32-1). Officer Obsenica's Report was reviewed and accepted by his supervisor later on February 4, 2013. (Docket No. 32-4 at 1). The "Detailed History" provides a fully contemporaneous log of calls and radio transmissions. (Docket No. 32-5). Included in the "Detailed History" is a transmission from Officer Rummel[8] at 2:00:48 AM, indicating that a red Malibu was possibly involved. (*Id.* at 4). These combine to support the Officers' testimony. *See Navarette v. California*, 134 S.Ct. 1683, 1689 (2014) ("In evidence law, we generally credit the propositions that statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of

---

[7] Officer Rummel did not testify as to Ms. McAfee's on-scene statements at the suppression hearing. 73:20–80:2. Accordingly, her affidavit does not cause the Court to reconsider its conclusions as to Officer Rummel's testimony either.
[8] Officer Rummel's unit number the night of the stop was 3526. (Docket No. 41 at 74:15–16).

event and statement negate the likelihood of deliberate or conscious misrepresentation." (internal quotes and citation omitted)). As such, Defendant has presented nothing to the Court that causes it to change its mind.

Finally, throughout this case, Defendant has made repeated attempts to impugn the credibility of those testifying based on an allegation that the vehicle he was in was maroon, whereas much of the testimony and evidence reflects a red car. (*See, e.g.*, Docket No. 119 at 4). "Maroon" is "a dark red." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 761(Frederick C. Misch, et al. eds., 11th ed. 2007) (definition of "maroon"). Accordingly, the Court does not find Defendant's red/maroon argument convincing.

Thus, the Court will not reconsider its decision denying Defendant's Motion to Suppress based on the redacted transcript of R.N.'s grand jury testimony.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Reconsideration, (Docket No. [99]), of the Court's Order denying his Motion to Suppress, (Docket No. [62]) shall be denied. An appropriate Order follows.


Dated: March 16, 2015

                                                    *s/ Nora Barry Fischer*
                                                    Nora Barry Fischer
                                                    United States District Judge

cc/ecf: All counsel of record.

    Michael Tyrone Waller (USM # 30240-068)
    Butler County Prison
    202 S. Washington Street
    Butler, PA 16001