**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 14-40 |
| | ) | Judge Nora Barry Fischer |
| MICHAEL TYRONE WALLER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. INTRODUCTION

On February 18, 2014, the Grand Jury charged Defendant, Michael Tyrone Waller ("Waller"), in a one-count indictment, with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Specifically, the Indictment against Waller charges:

> On or about February 4, 2013, in the Western District of Pennsylvania, the defendant, MICHAEL TYRONE WALLER . . . after having been convicted of the following offenses:
> 1. on or about December 5, 2011, at Criminal Number 08-423 in the United States District Court for the Western District of Pennsylvania, of the crimes of possession of a firearm by a convicted felon and possession with intent to distribute heroin, a Schedule I controlled substance;
> 2. on or about March 21, 2007, at Docket Number 200514606 in the Court of Common Pleas, County of Allegheny, Criminal Division, Commonwealth of Pennsylvania, of the crime of weapons provided to an inmate; and
> 3. on March 21, 2007, at Docket Number 200503769 in the Court of Common Pleas, County of Allegheny, Criminal Division, Commonwealth of Pennsylvania, of the crime of fugitive not to possess a firearm,
>
> which are all crimes punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm and ammunition, namely a .40 S&W caliber semi-automatic Springfield Armory pistol and .40 caliber semi-automatic ammunition. In violation of Title 18, United States Code, Section 922(g)(1).

(Docket No. 1)

On March 19, 2015, Waller, represented by counsel,[1] knowingly and voluntarily waived his right to trial by jury but explicitly requested the Court issue findings of fact and conclusions of law subsequent to the non-jury trial.[2] (Docket No. 129). Accordingly, the Court conducted a non-jury trial on April 14, 2015.[3] (Docket No. 132). At the outset of the trial, the parties read several stipulations into the record. (Tr. at 16:23–18:5).[4] Ultimately, the only issue tried was whether Waller knowingly possessed the firearm and ammunition. (Tr. at 18:16–23).

The Government presented two witnesses and several documentary exhibits. (Docket Nos. 132). The Defendant cross-examined the Government's witnesses but presented no evidence. (*Id.*). During the course of the trial, Waller orally renewed his Motion to Suppress.[5] (*Id.*). The Court denied this motion on the record, finding that no evidence presented during the course of the Government's case-in-chief caused the Court to change its opinion. (*Id.*; Tr. at 46:11–51:8).

Following the trial, the parties submitted proposed findings of fact and conclusions of law. (Docket Nos. 135, 136). The parties were given the option to file responses. (Docket

---

[1] Waller represented himself, with the aid of standby counsel, through the majority of the pretrial proceedings in this action. On March 19, 2015, during a colloquy with the Court, Waller officially retained his then standby counsel, Martin Dietz, Esq. (Docket No. 128). Mr. Dietz represented Waller through the trial and post-trial filings.

[2] Waller had previously waived his right to a jury trial, executing a standard waiver form of the type found in the Federal Judicial Center's Benchbook for District Court Judges. (Docket No. 106). However, Waller objected to that waiver, as it contained a provision waiving his "right to special findings." (Docket No. 107). As such, the Court reconvened and Waller, his counsel, counsel for the Government, and the Court executed an amended waiver, preserving Waller's rights to the herein findings of fact and conclusions of law. (Docket No. 129).

[3] For a more detailed discussion of the procedural history of this action, see the Court's Opinions at Docket Nos. 61, 84, 86, and 122.

[4] All citations to "Tr." reference the transcript of the nonjury trial, which can be found at Docket No. 134.

[5] Waller moved to suppress all evidence against him, alleging that the stop of the vehicle in which he was found was unconstitutional under *Terry v. Ohio*, 392 U.S. 1 (1968). (Docket No. 18). The Court denied this Motion in a Memorandum Opinion on August 29, 2014. (Docket Nos. 61, 62). On December 20, 2014, Waller filed a Motion to Dismiss the Indictment for Miscarriage of Justice, and False Information, (Docket No. 99), which the Court construed as a Motion for Reconsideration of its denial of the Suppression Motion. (Docket No. 113). In another Memorandum Opinion, the Court denied that Motion. (Docket Nos. 122, 123).

No. 133). On June 29, 2015, the Government filed its response. (Docket No. 137). The Defendant filed no response. Hence, the matter is now ripe for disposition.

Upon consideration of the trial record, the parties' subsequent submissions, and based on the following findings of fact and conclusions of law, the Court finds that the Government has proven, beyond a reasonable doubt, that Waller is guilty as charged in the Indictment in the above-captioned matter.

II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Federal Rule of Criminal Procedure 23, a defendant may waive his right to a jury trial. Following a bench trial, "the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or nonguilty, the court must state its specific findings of fact in open court or in a written decision or opinion." FED.R.CRIM.P. 23(c). As Waller specifically requested the Court make findings of fact and conclusions of law, (Docket No. 129), same are herein set forth. In a non-jury trial, the court sits as trier of fact and is tasked with resolving factual disputes and assessing the credibility of witnesses. *See Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009); *see also Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 158 n.4 (3d Cir. 1995).

a. *Findings of Fact*

On February 4, 2013, Defendant was a passenger in a vehicle that was stopped by City of Pittsburgh Police Officers Matson and Craig at approximately 2:00 a.m. (Tr. at 20:10–16; 22:13–23:6; 25:24–26:3l 32:23–34:4). The Government presented the testimony of Officers Gregory Livesey and Matt Schutz at trial, both of whom responded as backup units. (Docket No. 132).

i. Officer Livesey's Testimony

Gregory Livesey is employed as a police officer with the City of Pittsburgh Police Department. (Tr. at 19:24–20:3). He has been so employed for six years. (Tr. at 20:4–6). He has a Bachelor's degree in criminology from Indiana University of Pennsylvania. (Tr. at 20:8–9).

In the early morning hours of February 4, 2013, Officer Livesey responded to a scene near the intersection of North Lang and Felicia Way in Pittsburgh, where he found a vehicle already stopped by police.[6] (Tr. at 21:6–22:4). There were two people inside the vehicle. (Tr. at 22:13–15). Officer Livesey identified Waller as having been the occupant of the passenger seat of said vehicle. (Tr. at 22:18–23:6).

The officers on scene ordered Waller out of the car. (Tr. at 23:10–13). Waller refused. (Tr. at 23:15–17). The officers then removed Waller from the car. (Tr. at 23:22). When Waller was out of the vehicle, Officer Livesey was on his left side, and observed his hand near his waistband area. (Tr. at 23:11–24). Officer Livesey grabbed Waller's hand and, while doing so, felt a gun in his waistband. (Tr. at 23:24–25). Officer Livesey "forcibly removed [Waller's] hand," and a "gun fell to the ground." (Tr. at 23:25–24:1). Officer Livesey testified that the gun was a semi-automatic pistol. (Tr. at 24:2–6).

The gun was not of the make or model used by the Pittsburgh Police Department, and officers are not permitted to carry weapons other than those officially issued by the Department while on duty. (Tr. at 28:8–19). There were no other civilians in the immediate vicinity of Waller from whom the gun could have come. (Tr. at 28:4–7). Officer Livesey is "100 percent" sure that the gun came from Waller. (Tr. at 28:20–21).

Officer Livesey identified the gun displayed in Government Exhibit 1A as the gun that

---

[6] Officer Livesey was not involved in initially effecting the traffic stop of the vehicle; he responded as a backup unit to assist in removing Waller from the vehicle. (Tr. at 23:10–20).

fell from Waller's person. (Tr. at 24:7–14). He testified that the gun was recovered by Officer Schutz. (Tr. at 24:15–18).

The Court's observation of Officer Livesey's demeanor on the stand leads to the conclusion that he testified credibly. *See Giles,* 571 F.3d at 322; *see also Newman*, 60 F.3d at 158 n.4. Further, there was no cross-examination by the defense, or questioning by the Court, which would lead the Court to disagree with the truthfulness of Officer Livesey's testimony.

ii. Officer Schutz's Testimony

Matt Schutz is a police officer with the City of Pittsburgh Police Department. (Tr. at 31:17–21). He has been so employed for five years. (Tr. at 31:22–23). Officer Schutz received an Associate's degree in business management from the Community College of Allegheny County and subsequently attended the City of Pittsburgh Police Academy. (Tr. at 32:5–15).

Officer Schutz was also on the scene the night of Waller's arrest.[7] (Tr. at 32:23–33:3). Officer Schutz observed two individuals at the scene of the stopped vehicle. (Tr. at 33:11–14). Officer Schutz identified Waller as the passenger of the vehicle. (Tr. at 33:19–34:4).

Waller refused to exit the vehicle, as ordered. (Tr. at 34:12–14). When the Sergeant arrived,[8] he ordered the officers on scene to remove Waller from the vehicle. (Tr. at 32:15–18). At that time, Officer Schutz was at the driver's side of the rear of the vehicle. (Tr. at 34:19–21). From this vantage, he was able to observe Waller's extrication, but did not participate in same. (Tr. at 34:22–35:2). During Waller's extrication, a struggle ensued,[9]

---

[7] Like Officer Livesey, Officer Schutz was called in as backup, and did not effect the traffic stop of the vehicle. (Tr. at 33:4–5)
[8] A Sergeant was called pursuant to Waller's request for a supervisor. (Tr. at 42:21–25).
[9] Officer Schutz related that the officers extracting Waller from the vehicle were trying to get control of his hands and that Waller "was wrestling around with them." (Tr. at 43:7–12).

Officer Schutz heard another officer shout, and he then proceeded around the vehicle to assist the other officers. (Tr. at 35:7–21). As Officer Schutz approached the other officers, he heard what sounded like a heavy metal object hit the ground in the area of the front passenger door. (Tr. at 35:22–24; 37:9–15). Officer Schutz did not observe the gun fall. (Tr. at 41:22–23). He bent over and picked up a firearm. (Tr. at 35:24–25). The firearm was a semi-automatic pistol. (Tr. at 36:1–5). It was loaded. (Tr. at 36:12–13). The gun was not of the make or model used by the Pittsburgh Police Department, and officers are not permitted to carry weapons other than those officially issued by the Department while on duty. (Tr. at 37:24–38:12).

Upon recovery of the gun, Officer Schutz took it away from Waller and the other officers and "cleared" it, by releasing the magazine and removing the round from the chamber. (Tr. at 37:1–6; 38:13–39:9).

Officer Schutz identified the handgun portrayed by Government Exhibit 1A as the one he recovered from the ground. (Tr. at 36:6–11). He also testified that the gun was loaded, (Tr. at 36:12–13), and that the ammunition depicted in Government Exhibit 1B was of the same caliber as the gun, (Tr. at 36:14–25).

Like with Officer Livesey, the Court's observation of Officer Schutz's demeanor on the stand leads to the conclusion that he testified credibly. *See Giles,* 571 F.3d at 322; *see also Newman*, 60 F.3d at 158 n.4. Further, there was no cross-examination by the defense, or questioning by the Court, which would lead the Court to disagree with the truthfulness of Officer Schutz's testimony.

    b. *Conclusions of Law*

        i. <u>Elements of the Crime</u>

To find a violation of 18 U.S.C. § 922(g)(1), the Government must prove, beyond a

reasonable doubt the following elements:

- That the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year;

- That, after this conviction, the defendant knowingly possessed a firearm or ammunition; and,

- That the defendant's possession was in or affecting interstate commerce.

18 U.S.C. § 922(g)(1).

The government need not prove its case beyond *all* doubt or to a mathematical certainty. *See Holland v. United States*, 348 U.S. 121, 138 (1954); *see also* Third Circuit Model Jury Instruction 3.06. Rather, it must prove each element beyond a reasonable doubt. *Id.*

### ii. Stipulations and Exhibits

The parties stipulated to several points. (Tr. at 16:23–18:5). First, Waller stipulated that he had previously been convicted of a felony. (Tr. at 17:3–14). Second, Waller stipulated to the interstate nexus element, as the firearm at issue was manufactured in Croatia, the laser sight in China, and the ammunition in some unnamed location outside of Pennsylvania. (Tr. at 17:15–18:5). Finally, Waller stipulated that the items depicted in Government Exhibit 1A, the firearm, and Government Exhibit 1B, the ammunition, are, in fact, a firearm and ammunition and are safe and operable. (Tr. at 18:7–23).

The Court accepts these stipulations. Hence, the Court finds that the Government proved the first and third elements of the crime charged beyond a reasonable doubt. Accordingly, the only remaining issue is whether Waller knowingly possessed the firearm and/or ammunition. (Tr. at 18:16–23).

### iii. Possession

To establish the second element of the offense, the Government must prove that Waller knowingly possessed the firearm in question. Third Circuit Model Jury Instruction 6.18.922G-4. "To 'possess' means to have something within a person's control." *Id.* It is well settled that "[t]he government can prove possession of a firearm for purposes of § 922(g)(1) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was found (constructive possession)." *United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014). "Actual possession exists when a person has direct physical control over a thing." *Henderson v. United States*, 135 S.Ct. 1780, 1784 (2015).

The Court finds that the credible testimony of Officers Livesey and Schutz proves, beyond a reasonable doubt, that Waller knowingly possessed a firearm on the morning of February 4, 2013. Officer Livesey testified that he observed Waller with "his hand down near his waistband area." (Tr. at 23:23–24). Officer Livesey grabbed Waller's hand and felt a gun in his waistband. (Tr. at 23:24–25). After Officer Livesey forcibly removed Waller's hand from his waistband area, the gun fell to the ground. (Tr. at 23:25–24:1).

Officer Schutz testified that he heard what sounded like a heavy metal object hit the ground in the area of the front passenger door. (Tr. at 35:22–24; 37:9–15). Although Officer Schutz did not observe the gun fall, he walked around the car, bent over, and picked up a firearm. (Tr. at 35:24–25; 41:22–23).

Both officers testified that this gun was not the same type used by the Pittsburgh Police Department, (Tr. at 28:4–7; Tr. at 37:24–38:12), and that officers are not permitted to carry weapons other than those officially-issued to them by the Department, (Tr. at 28:8–19; Tr. at 37:24–38:12). Further, both officers testified that the gun depicted in Government's Exhibit 1A

was the gun that fell from Waller's person and was recovered on the scene. (Tr. at 24:7–18; 36:6–25). Finally, Officer Schutz testified that the gun was loaded and that the ammunition depicted in Government's Exhibit 1B was of the same caliber as the gun. (Tr. at 36:14–25).

Crediting this testimony, the Court concludes that Waller was in actual possession of the firearm depicted in Government's Exhibit 1A because it fell from his waistband after Officer Livesey felt a gun there. *See United States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011) (finding that a confidential informant's report of seeing a gun in the defendant's waistband sufficiently supported a finding of actual possession); *see also United States v. David*, 222 Fed. App'x 210, 214–15 (3d Cir. 2007) (holding that locating a firearm in the pocket of a discarded piece of clothing is sufficient to support a finding of actual possession); *see also United States v. Somerville*, Crim. No. 09-341, Docket No. 48 (W.D. Pa. June 11, 2010) (Ambrose, J.) (determining that testimony that a defendant grabbed his waistband, fled on foot, and, during his flight, dropped a magazine onto the ground, if believed, would prove actual possession). The Court further concludes that Waller was in actual possession of the ammunition depicted in Government's Exhibit 1B, as the gun was loaded when recovered. *See* Section II.a.ii, *supra*.

"[T]he knowledge element in a felon-in-possession case will necessarily be satisfied if the [factfinder] finds that the defendant physically possessed the firearm." *United States v. Caldwell*, 760 F.3d 267, 279 (3d Cir. 2014). Here, Waller's actions combined with the location of the gun lend further support to the conclusion that he possessed the gun knowingly. For example, Waller's noncompliance with the officers' order to exit the vehicle and his "wrestling around" with the officers after he was forcibly removed from it demonstrate consciousness of guilt. *See United States v. Heath*, 456 Fed. App'x 102, 103–054 (3d Cir. 2011). That Waller kept his hand "down near his waistband area" after being told to put his hands up also

9

demonstrates that he knew the gun was there. *Cf. United States v. Samuels*, 131 Fed. App'x 859, 862–63 (3d Cir. 2005) (holding that the suspect's hand movements near his waistband, *inter alia*, supported a finding of reasonable suspicion to conduct a *Terrry* search of the suspect). Accordingly, given Waller's actions and the fact that the gun was physically on his person, the Court concludes that he knowingly possessed the gun.

In conjunction with the previously referenced stipulations that the recovered firearm and ammunition, are, in fact, a firearm and ammunition and indeed operable, the Government has proven, beyond a reasonable doubt, the second element of the crime of felon in possession of a firearm, as defined by 18 U.S.C. § 922(g)(1).[10] With the parties' stipulation as to the remaining element, the Court concludes that the Government has proven, beyond a reasonable doubt, all three elements of the crime of felon in possession of a firearm, as defined by 18 U.S.C. § 922(g)(1). Accordingly, a judgment of guilty shall be entered against the Defendant, Michael Tyrone Waller, at Count One of the Indictment in the above-captioned matter.

### III. RENEWAL OF SUPPRESSION MOTION

At the conclusion of the Government's case-in-chief, Waller, through his counsel, renewed his suppression motion challenging the constitutionality of the stop of the vehicle in which he was located.[11] (Tr. at 46:11–12). The Court gave Waller an opportunity at that time to present testimony in support of his renewed Motion to Suppress. (Tr. at 48:6–10). No such testimony was adduced. (Tr. at 48:18–25). Accordingly, the Court denied the renewed Motion on the record, as nothing presented in the Government's case-in-chief caused it to

---

[10] As additional support, the Court notes Defendant's Proposed Findings of Fact at paragraphs 20 and 21, which admit that "Officer Livesey noticed a handgun in the defendant's waistband," (Docket No. 136 at ¶ 20), and that "[a]s the defendant was being removed from the vehicle, the semi-automatic handgun fell to the ground and was recovered, (*Id.* at ¶ 20).

[11] *See* note 5, *supra*.

reconsider its prior ruling in light of the prevailing standard. (Tr. at 50:20–51:8).

In his proposed findings of fact and conclusion of law, Waller asks the Court to reconsider its suppression ruling for the third time. (Docket No. 136 at 9–10). The Court will again deny this request, as no evidence presented at the trial of this matter conflicts with or causes the Court to otherwise reconsider the bases for its denial of Waller's Motion to Suppress.[12] *See United States v. Perminter*, Criminal No. 10-204, 2012 WL 642530, at *3 (W.D. Pa. Feb. 28, 2012) (citing *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) ("The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice."). Given the Court's stance that it will not reconsider Waller's Suppression Motion in light of the trial testimony, the Defendant's proposed findings at paragraphs 1–17 and 22–30 will not be further considered by the Court, as they all go to the suppression issue. (Docket No. 136).

IV. CONCLUSION

Based on the foregoing, a judgment of guilty shall be entered against Defendant Michael Tyrone Waller as to Count One in the Indictment in the above-captioned matter. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: July 9, 2015
cc/ecf: All counsel of record.

---

[12] Particularly noteworthy is the fact that neither of the trial witnesses were involved in the initial stop of the vehicle in which Waller was located.