IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                                     )<br>)<br>MICHAEL TYRONE WALLER,         )<br>)<br>Defendant.              ) | Criminal No. 14-40<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

I.  INTRODUCTION

Presently before the Court are Defendant Michael Tyrone Waller's pro se Motion for a New Trial under Fed. R. Crim. P. 33 (Docket No. 197), and the Government's opposition thereto, (Docket No. 199). After careful consideration of the parties' submissions and for the following reasons, Defendant's Motion [197] is denied.[1]

---

[1] On March 17, 2021, Defendant filed a document, *see* (Docket No. 204), which was docketed as a reply brief in support of his Rule 33 motion but was filed well after the Court's February 8 deadline. (*See* Docket No. 201). Moreover, the filing does not address Defendant's Rule 33 motion at all; rather, it petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241 and seeks summary judgment under Fed. R. Civ. P. 56 because the Court allegedly lacks jurisdiction over him. "A § 2241 petition must be brought by a prisoner in the district where he is incarcerated rather than argued to the sentencing judge . . . [and] can only be raised after a defendant has exhausted all of his administrative remedies pursuant to BOP policies and procedures." *United States v. Robinson*, Crim. No. 16-185, Docket No. 498 (W.D. Pa. July 23, 2019) (citations omitted). Defendant's return mailing address on the motion is the Northeast Ohio Correctional Center (NEOCC), in Youngstown, Ohio, while his current prison records reflect that he is housed at USP Marion in Marion, Illinois. (*See* Docket No. 204; *see also* https://www.bop.gov/inmateloc/ (last visited 03/18/2021)). This Court also plainly had jurisdiction over this case because Defendant was charged with an offense against the United States. *See* 18 U.S.C. § 3231; *see also United States v. Banks*, 372 F. App'x 237, 241 (3d Cir.2010) (holding that the District Court properly denied prisoner's claim that the Court lacked jurisdiction because he was a Lakota Sioux Indian). In any event, this Court is not the proper venue to raise his § 2241 motion. Accordingly, his request at Docket No. 204 is denied.

1

II. BACKGROUND

A federal grand jury returned a one-count indictment on February 18, 2014 against Defendant charging him with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1). In charging Defendant with violating § 922(g)(1), the grand jury listed three crimes punishable by more than 1-year imprisonment for which Defendant had been convicted prior to his alleged possession of a .40 S&W caliber semi-automatic Springfield Armory pistol on February 4, 2013. *See id.* at 1-2. Among Defendant's enumerated prohibited crimes was a prior conviction for felon in possession under § 922(g)(1) from 2011, for which he had served more than a year incarceration. *See id.* at 1; *see also* (Docket No. 145 at 12-14 ¶ 36); *see generally United States v. Waller*, Crim. No. 08-423, Docket No. 77 (W.D. Pa. Dec. 5, 2011).

The Court held a bench trial on April 14, 2015. (*See* Docket No. 132). At the outset of the trial, Defendant entered into stipulations with the United States as to his prior felon status, as well as to the interstate nexus of the firearm and ammunition. *See id.* at 17-18. As part of the parties' stipulations, the Government put on the record the evidence it would have submitted to prove Defendant's felon status. *See id.* at 17 ("The government's evidence as we submit it as to the defendant would have been multiple certified copies of his previous convictions, as well as his probation officer who had him on supervised release for his previous two convictions, two counts at one conviction is present as well."). But, due to the stipulations, the Government did not offer certified copies of Defendant's prior convictions as trial exhibits. *See id.* at 45 ("Your Honor, the government had indicated that we had Exhibits 3, 4, and 5, which would have been certified copies of the defendant's priors. Given the stipulation to the element in that regard, I am not going to offer those in evidence."). The Court then proceeded with a non-jury trial on the sole issue of whether Defendant knowingly possessed the firearm. *See id.* at 19-20.

At trial, the Government presented the testimony of two City of Pittsburgh police officers – Officer Livesey and Officer Schutz – who responded as backup to Defendant's traffic stop on February 4, 2013. *See generally id.* The officers testified that Defendant was ordered out of the vehicle but refused to comply, so the officers had to extricate him from the vehicle. *See id.* at 23, 26, 34. After forcibly removing him from the car, Officer Livesey testified that he ordered Defendant "to put his hands up on the car," but instead he kept "his hand down near his waistband area." *See id.* at 23. Then, Officer Livesey stated that he grabbed Defendant's hand from near his waistband and the .40 S&W caliber semi-automatic Springfield Armory pistol fell to the ground. *See id.* at 23-24. Officer Livesey testified that he was "100 percent" sure that the gun was possessed by Defendant. *See id.* at 28.

Following the trial, the Court issued a Memorandum Opinion on July 9, 2015, finding Defendant guilty of violating § 922(g)(1). (*See* Docket No. 138). The Court found Officer Livesey's and Officer Schutz's testimony credible and concluded that it "prove[d], beyond a reasonable doubt, that [Defendant] knowingly possessed a firearm on the morning of February 4, 2013." *See id.* at 8. The Court also stated that Defendant's "actions combined with the location of the gun lend further support to the conclusion that he possessed the gun knowingly," citing his "noncompliance with the officers' order to exit the vehicle and his 'wrestling around' with the officers after he was forcibly removed from it [to] demonstrate consciousness of guilt." *See id.* at 9. After finding Defendant guilty, the Court held a sentencing hearing on November 6, 2015, and imposed a sentence of 120 months' imprisonment, which was to be served consecutively to any sentence to be imposed for the supervised release violation under his prior § 922(g)(1) sentence.[2] (*See* Docket No. 154). Defendant appealed the Court's judgment, and it was affirmed.

---

[2] On October 15, 2020, Defendant was sentenced to 8 moths' imprisonment for his supervised

3

*See United States v. Waller*, 665 F. App'x 150, 154 (3d Cir. 2016). Defendant also collaterally attacked his sentence under 28 U.S.C. § 2255, which the Court denied, and he was denied a certificate of appealability by the Court of Appeals. (*See* Docket No. 185; Docket No. 194).

On December 8, 2020, more than five years after his conviction, Defendant filed the instant motion for a new trial under Fed. R. Crim. P. 33. (Docket No. 197). Defendant's motion challenges his conviction under 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, and is predicated on the United States Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The Government countered with its response in opposition on January 7, 2021. (Docket No. 199). As such, the Court considers Defendant's motion fully briefed and ripe for disposition.

III.    LEGAL STANDARD

Under Fed. R. Crim. P. 33(a), a defendant may move the Court to vacate his judgment and ask the Court to grant a new trial. However, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." *See id.* at 33(b)(2). The Court may consider Rule 33 motions filed after the 14-day deadline only if a defendant establishes excusable neglect under Fed. R. Crim. P. 45(b)(1)(B). *See United States v. Montgomery*, 442 F. Supp. 3d 875, 882-83 (W.D. Pa. 2020) (Hornak, C.J.); *see also United States v. Kennedy*, 354 F. App'x 632, 636 (3d Cir. 2009) ("Under Federal Rule of Criminal Procedure 45(b)(1)(B), a court may extend the time prescribed under Federal Rule of Criminal Procedure 33(b)(2) due to excusable neglect."). "Excusable neglect is an equitable determination that should take account of relevant circumstances, including danger of prejudice, the length of the delay, the delay's impact on judicial proceedings, the reason for the delay, whether the movant

---

release violation. *See Waller*, Crim. No. 08-423, Docket No. 119.

had control over the delay, and whether the movant acted in good faith."[3] *Kennedy*, 354 F. App'x at 636. Absent excusable neglect, an untimely motion for a new trial cannot be considered.

When considering a motion for a new trial, a District Court may order a new trial "if the interest of justice so requires." See Fed. R. Crim. P. 33(a). The interest-of-justice standard under Rule 33 "recognizes that if a trial court concludes for any reason that the trial has resulted in a miscarriage of justice, the court has broad powers to grant a new trial." See 3 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 581 (4th ed. 2020). In that regard, Rule 33 motions "are subject to the harmless and plain error provisions of [Fed. R. Crim. P.] 52[,] [meaning] if the substantial rights of the defendant were not affected, the court should refuse to grant the defendant's motion." See *id*; see also *id.* at § 589 ("Courts have concluded that any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial."); *Montgomery*, 442 F. Supp. 3d at 884 (applying plain-error review to unpreserved issue raised in Rule 33 motion). To that end, "motions for a new trial are to be granted with caution." See Wright & Miller at § 581; see also *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (stating that a district court should order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted") (internal quotation marks and citation omitted)). The burden of proving that the error affected his substantial rights and that a new trial is warranted lies with the defendant. See *Montgomery*, 442 F. Supp. 3d

---

[3] The non-exhaustive list of equitable considerations under the "excusable neglect" standard articulated by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), was developed through an analysis of Fed. R. Bankr. P. 9006(b)(1). In support of its interpretation, the Supreme Court relied, in part, on the treatment of "excusable neglect" within the Federal Rules of Civil Procedure. See *id.* at 391-92. The Supreme Court also noted that "excusable neglect" was given a similar interpretation under Federal Rule of Criminal Procedure 45(b), which "was modeled after [Federal Rule of Civil Procedure 6(b)]." See *id.* at 392, n.9. Thus, the factors articulated in *Pioneer* are equally relevant to the Court's "excusable neglect" consideration here. See *Kennedy*, 354 F. App'x at 636, n.2.

5

at 883 (citing *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006)).

    IV.    DISCUSSION

Defendant's one-page motion for a new trial is premised on the Supreme Court's decision in *Rehaif*. Specifically, Defendant argues that "[b]ecause the government did not prove that defendant knew he belonged to a class of people who could not lawfully possess a firearm," this Court must "issue an order for a new trial under [Rule 33]." (Docket No. 197 at 1). The Government counters that Defendant's motion is both untimely and without merit. (*See* Docket No. 199). In this Court's estimation, Defendant's motion is untimely, and he has not shown excusable neglect to excuse his untimeliness. Defendant's motion also lacks merit because he cannot show that his substantial rights were affected. Accordingly, his motion will be denied.

At the time of Defendant's non-jury trial, the Court listed three elements that the Government was required to prove for a conviction under § 922(g)(1): (1) that the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year; (2) that, after this conviction, the defendant knowingly possessed a firearm or ammunition; and, (3) that the defendant's possession was in or affecting interstate commerce. *See* (Docket No. 138 at 7); *see also United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). And "[w]hoever knowingly violate[d] . . . [§] 922 [was to] be fined . . . imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2). In *Rehaif*, the Supreme Court held that the knowledge requirement of § 924(a)(2) applied not only to the possession element of § 922(g), as it was previously interpreted, but also to the prohibited status element. 139 S. Ct. at 2194 ("We hold that the word 'knowingly' applies both to the defendant's conduct and to the defendant's status [under § 922(g)]."). The Supreme Court thereby added an additional knowledge-of-status element to § 922(g) violations. *See United States v. Nasir*, 982 F.3d 144, 161 (3d Cir. 2020) ("[I]t bears repeating that, until *Rehaif*,

§ 922(g) had not been understood as the Supreme Court interpreted it there[;] [n]o knowledge-of-status element had previously been perceived in the statute, and no proof of it was required.").

Importantly, for the purposes of Defendant's motion, *Rehaif*'s legal interpretation did not constitute "newly discovered evidence" under Rule 33. Therefore, Defendant's motion is untimely because it was brought more than 5 years after his conviction, and nearly 18 months after *Rehaif*, was issued by the Supreme Court. *See* Fed. R. Crim. P. 33(b)(2). Since Defendant's motion is untimely, the Court may only consider it if he can establish "excusable neglect" for the delay. Defendant does not allege any facts in his one-page motion that would support a finding of excusable neglect, much less argue that he meets the standard. (*See generally* Docket No. 197). Specifically, Defendant does not address why he failed to file his motion for a new trial for over 5 years after his conviction and nearly 18 months after the Supreme Court issued *Rehaif*.[4] Nor does he address the impact that this lengthy delay has on the Court's judicial proceedings or the Government. The Government counters that it is "substantially prejudice[d]" by the delay, "given that the witnesses testified and this Court issued its verdict in the spring and summer of 2015, more than five years ago." (Docket No. 199 at 8). In sum, the Court agrees with the Government that Defendant has not met his burden of establishing excusable neglect to excuse his untimely motion.[5]

---

[4] Defendant also does not explain why he did not raise this issue on either direct appeal or in his prior habeas motion. "While lower court decisions prior to *Rehaif* had held that the government did not need to prove the *mens rea* requirement to convict a defendant under § 922(g), the issue had been litigated in federal courts across jurisdictions for many years prior to [Defendant's] conviction." *United States v. Battle*, 2020 WL 4925678, at *5 (W.D. Pa. Aug. 21, 2020) (Schwab, J.) (quoting *United States v. Scott*, 2020 WL 1030927, at *13 (E.D. La. Mar. 3, 2020)). The Third Circuit had previously considered and rejected the prevailing argument in *Rehaif*, and the issue has been "percolating in the courts for years," including during the time of Defendant's non-jury trial. *See id.* (citations and internal quotation marks omitted). The fact that the issue had not yet prevailed is not an excuse for failing to raise it.

[5] The Court notes that Chief Judge Hornak previously found excusable neglect to permit an untimely Rule 33 motion based on *Rehaif*. *See Montgomery*, 442 F. Supp. 3d at 884-85. However,

Even assuming Defendant's motion was timely and that *Rehaif* applies retroactively to his case,[6] his motion is without merit. To succeed on the unpreserved argument in his motion, Defendant would have to show "plain error" under Fed. R. Crim. P. 52(b), i.e. an error that "affects substantial rights." The Supreme Court's plain-error tests proceeds in four steps: (1) there was an error; (2) the error was clear and obvious; (3) the error affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 734-36 (1993); *see also United States v. Andrews*, 681 F.3d 509, 517 (3d Cir. 2012). Here, the Government concedes that following *Rehaif* there was error and it was plain. (Docket No. 199 at 11). But, the Government contends that Defendant has failed to show that the error affected his substantial rights. *See id.* at 12-15. After evaluating this case in light of the prevailing standards, this Court agrees with the Government that Defendant has failed to demonstrate that his substantial rights were affected. The Court's rationale follows.

First, although the Court did not require the Government to prove the knowledge-of-status

---

that case is easily distinguishable. First, in *Montgomery*, there was less of a delay as the defendants filed their motion for a new trial one year from their conviction, while still awaiting sentencing, and within four months of the *Rehaif* decision. *See id.* at 882, 884. Second, and most importantly, in *Montgomery*, the Government "concede[d] that it ha[d] not been prejudiced in any significant way as a result of [the defendants'] failure to file their motions earlier." *See id.* at 884. As a result of that concession, the Court found excusable neglect in that "not [so] run-of-the-mill federal criminal case." *See id.* Here, given the lengthy delay, Defendant's one-page motion devoid of facts alleging excusable neglect, and the Government's claim that it would be "substantially prejudice[d]," the Court finds *Montgomery* distinguishable.

[6] The Court acknowledges that there is a "growing dispute among district courts concerning whether *Rehaif* is in fact retroactive." *See United States v. Roberts*, 2020 WL 6700918, at *2, n.3 (E.D. Pa. Nov. 13, 2020) ("The Third Circuit has yet to decide whether *Rehaif* recognizes a new non-constitutional right or rule made retroactive on collateral review."); *see also In re Sampson*, 954 F.3d 159, 161 (3d Cir. 2020) (holding that *Rehaif* "did not set forth a new rule of *constitutional* law" for the purposes of a second or successive habeas motion under § 2255(h)(2)).

element at Defendant's bench trial, there is circumstantial evidence in the record to show that element was met. *See Rehaif*, 139 S. Ct. at 2198 (stating that "knowledge can be inferred from circumstantial evidence") (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). Specifically, the record contains: (1) the parties' detailed stipulations as to Defendant's prior felon status; and (2) extensive testimony of Defendant's furtive conduct in an attempt to conceal the firearm. (Docket No. 134). As for the stipulations, the parties agreed that the Defendant was a felon prior to February 4, 2013, which prevented the Government from introducing evidence of that conviction under *Old Chief v. United States*, 519 U.S. 172, 174 (1997). (*See* Docket No. 134 at 17). However, the prosecutor also proffered the evidence that the Government would have introduced to prove Defendant's prior felon status:

> The government's evidence as we submit it as to the defendant would have been multiple certified copies of his previous convictions, as well as his probation officer who had him on supervised release for his previous two convictions, two counts at one conviction is present as well.

*Id.* In addition,, one of Defendant's prior felony convictions was for the same offense, felon in possession in violation of § 922(g)(1), and he had already served more than a year incarceration at the time he possessed the firearm in this case. *See* (Docket No. 1 at 1 ¶ 1); *see also Waller*, Crim. No. 08-423, Docket No. 77. *Cf. United States v. McMillan*, -- F. App'x -- , 2021 WL 942916, at *2 (3d Cir. Mar. 12, 2021) (finding a *Rehaif* error did not affect the defendant's substantial rights by "infer[ring] that [Defendant], having voluntarily admitted to felony offenses punishable by over a year in prison and having indeed been sentenced to terms in excess of a year, knew he was someone 'who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year.'").

Beyond the parties' stipulations, the record is replete with testimony of Defendant's furtive conduct, which demonstrates his consciousness of guilt and serves as circumstantial evidence of

his knowledge of felon status. Both Officer Livesey and Officer Schultz testified to Defendant's noncompliant conduct and attempts to conceal the firearm. (*See* Docket No. 134). Based on the testimony of the Officers, the Court wrote in its Memorandum Opinion that "[Defendant's] noncompliance with the officers' order to exit the vehicle and his 'wrestling around' with the officers after he was forcibly removed from it demonstrate[d] consciousness of guilt." (Docket No. 138 at 9). Further, as the Court of Appeals held in affirming Defendant's direct appeal:

> Waller did more than merely refuse to comply with the police officers' orders. He was ordered to exit the vehicle, but refused to do so (claiming that the car was pulled over for racial reasons and demanding to speak with a supervisor). After Sergeant Charles Henderson arrived on the scene, he remained non-compliant and was forcibly removed from the car. Even before the supervisor arrived, Officer Jonathan Craig ordered Waller to keep his hands on the dashboard. But he reached his left hand down to touch the left side of his body—where a firearm was subsequently discovered.

*See Waller*, 665 F.3d at 152. In sum, the evidence in the record of Defendant's furtive conduct proves far more than he knew what he was doing could "get him into trouble." *See Nasir*, 982 F.3d at 172. Rather, the record evidence proves that Defendant knew he was a previously convicted felon who was not to be in possession of a firearm. *See United States v. Robinson*, 2019 WL 7985173, at *6 (W.D. Tenn. Nov. 13, 2019) ("Although the Government submitted that evidence to prove the possession-knowledge element of [Defendant's] offense, it also supports the status-knowledge element - had [Defendant] not known of his felon status, it is less likely that he would have run from the police. This circumstantial evidence supports the finding that [Defendant] knew he was a felon.").

Second, the posture and record in this case make it distinguishable from other cases where Courts have held that a defendant's substantial rights were violated in light of *Rehaif*. *See Nasir*, 982 F.3d at 170, n.29 ("Each [post-*Rehaif*] case must be decided on its own facts. For example, there have been cases where sufficient evidence was presented at trial to show that the defendant

10

was aware of his status as a felon at the time of the crime."). For example, on direct appeal following a jury trial in *Nasir*, the Court of Appeals concluded that the defendant's substantial rights were affected "[b]ecause literally no evidence was presented concerning [Defendant's] knowledge of his status as a felon, it [wa]s at least reasonably probable, if not certain, that the jury would not have found there was proof beyond a reasonable doubt of the knowledge-of-status element." *See id.* at 171. As stated above, the record before the Court here contains strong circumstantial evidence of Defendant's knowledge of his felon status, i.e., the parties' stipulation and the Officers' testimony. Moreover, unlike *Nasir* and *Montgomery*, this case involved a bench trial, thereby alleviating any concerns of what the jury may or may not have found. *See Montgomery*, 442 F. Supp. 3d at 893 (finding a "flip-side [jury] instruction, coupled with the stipulation's underwhelming evidence and the jury's freedom to reject the parties' agreed upon facts, establishe[d] a reasonable probability that the error affected the outcome of the proceedings").

Thus, the strong circumstantial evidence of Defendant's knowledge of his felon status, including the detailed stipulations and testimony concerning Defendant's furtive conduct, as well as the fact that this case was conducted as a bench trial make this case distinguishable. All told, after carefully considering the record in this case, this Court finds that Defendant has not shown that his substantial rights were affected. Accordingly, his motion likewise fails on the merits.

V. CONCLUSION

Based on the foregoing, Defendant's Motion for a New Trial under Fed. R. Crim. P. 33 [197] is denied, with prejudice. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: March 19, 2021

cc/ecf: All counsel of record

       Michael Tyrone Waller
       BOP # 30240-068
       USP Marion
       P.O. Box 1000
       Marion, IL 62959
       (via U.S. mail)